89 P.3d 870

**In the Matter of Defendant A, Attorney at Law.**

**Robert WILHELM, Grievant,**

v.

**IDAHO STATE BAR; and Defendant A, Respondents.**

No. 29003.

Supreme Court of Idaho, Boise, November 2003 Term.

April 27, 2004.

Robert L. Wilhelm, Boise, pro se grievant.

Hollifield & Bevan, Twin Falls, for respondent Defendant A.

Julia Crossland, Assistant Bar Counsel to the Idaho State Bar, Boise, for respondent Idaho State Bar.

SCHROEDER, Justice.

## ON THE BRIEFS

This appeal arises from an attorney discipline matter before the Professional Conduct Board of the Idaho State Bar. A Hearing Committee of the Professional Conduct Board determined that Defendant A violated Idaho Rule of Professional Conduct 1.5(f) (Rule 1.5(f)) by failing to produce an adequate itemization of the legal services provided and the fees charged to Robert Wilhelm (Wilhelm) and that a private reprimand be given. Both Wilhelm and Defendant A appeal.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

Defendant A represented Robert Wilhelm (Wilhelm) on two felony drug-related charges in 1997 through his sentencing on June 15, 1998. In February 1999, Wilhelm requested that Defendant A send him an itemization of services rendered. Defendant A responded by letter that Wilhelm had already been provided with the information and also stated that he could not recreate the itemization of the file after a copy of the file had been sent to Wilhelm's new attorney. Wilhelm filed a complaint with the Idaho State Bar (ISB), stating that he had paid Defendant A over $30,000 for $10,000 of work.

On May 14, 1999, the ISB requested that Defendant A provide Wilhelm the requested information. On May 19, 1999, Defendant A forwarded to the ISB a copy of his May 19, 1999, response to Wilhelm, which included three billing statements—the first dated September 4, 1997, the second dated February 1, 1998, and the third dated July 1, 1998. Both the September 1997 bill and the July 1, 1998, bill contain a large amount of detail concerning the work performed as well as the time spent on each task. The February 1, 1998, bill, however, reflects only a "reduced, flat

rate agreed upon" of $13,000, which was paid in full by Wilhelm.

On October 26, 1999, Wilhelm wrote to the ISB stating that he had only received a partial itemization from Defendant A and disputed that the work described in the February 1, 1998, bill was done on a flat fee basis. Wilhelm made another demand for itemization, claiming that it would bolster his allegation of fraud against Defendant A in a post-conviction motion based on ineffective assistance of counsel. Also attached to this correspondence was a June 16, 1999, letter from Defendant A to Wilhelm which stated the following:

The $13,000 fee was a flat rate criminal matter. Flat rate criminal cases are very common and are completely ethical and legal. I researched, wrote and consulted with you every day, eight (8) hours a day for four (4) weeks. I turned away new clients and neglected my existing clients to serve you in this manner. This alone is worth a premium. However, I reduced my actual hourly rate by $4,600 based on our flat rate agreement. What you see in the court file is only the tip of the iceberg. For example, the F. Lee Bailey forms, briefs and motions on disc you had me read were literally thousands of pages, of which I read every word. You bought me entire treatises to read from cover to cover, which I did. I went through about every criminal case and relevant statute in Idaho. I filed every motion that had any merit. I consulted with mental health professionals and read all your literature on psychology. I talked to you for over fifty hours on the telephone and in person. The list goes on. You had an attorney at your disposal and working full time on your case for four (4) weeks. If you are saying we had no flat rate agreement, then you owe me $4,600 as a matter of law.

On November 29, 1999, the ISB sent Wilhelm a letter stating that Bar Counsel determined that Defendant A had not violated Idaho Rules of Professional Conduct (IRPC) 1.5(f). The letter stated the ISB did not have the authority to intervene in attorney/client fee disputes, but the ISB could offer fee arbitration as an alternative to litigation. A packet of fee arbitration forms and information was enclosed with the letter. On January 10, 2000, Wilhelm wrote the ISB requesting a response to his October 26, 1999, letter and reiterating Defendant A's incompetent representation and fraud. On February 18, 2000, a copy of the previous letter was again sent to Wilhelm along with another fee arbitration packet. In the same correspondence Wilhelm was notified that the complaint had been closed. Wilhelm wrote to the ISB requesting review and specifically asked that Defendant A be ordered to provide an itemization of the work performed under the flat fee rate, and that his allegations of fraud be reviewed as well.

A Hearing Committee of the Professional Conduct Board (Hearing Committee) held a hearing on June 13, 2000, and issued a decision on June 22, 2000. The Hearing Committee agreed with Bar Counsel that insufficient evidence of fraud existed but found "significant issues with regard to Defendant A's record keeping and billing practices in this matter" which made it impossible for Defendant A to provide Wilhelm with a complete and accurate itemization as required by IRPC 1.5(f). The Hearing Committee found that although the work was originally done on an hourly basis, when "more complex legal issues were raised, the parties agreed to a flat fee covering [Defendant A's] work," and that no itemization was required for this period. The Hearing Committee found that a flat fee arrangement is not unusual and that if Wilhelm did not believe that Defendant A's fee was commensurate with the amount of work performed, then Wilhelm should submit the matter to fee arbitration. The Hearing Committee remanded to the ISB the issues regarding Defendant A's recordkeeping and billing practices in general as well as the itemization of the bills dated September 4, 1997, and July 1, 1998.

On July 20, 2000, Defendant A responded to the inquiries. Since one of the Hearing Committee's concerns was that the first and final billing statements provided to Wilhelm did not provide the dates upon which the work was performed, Defendant A provided revised statements for September 4, 1997,

and July 1, 1998, which provided most of the missing dates. Defendant A stated in his letter that since the hearing he had the opportunity to retrieve his file from storage and was able to determine when most of the work was performed.

On July 26, 2000, the ISB sent Wilhelm a copy of Defendant A's response to its inquiries. Wilhelm noted minor discrepancies as evidence that Defendant A was "doctoring the billing."

Wilhelm filed a malpractice action in 2000. Defendant A moved to dismiss the claim on the basis that Wilhelm had not filed the action within the applicable statute of limitations and had failed to state a claim upon which relief may be granted. Wilhelm submitted a request for arbitration. On February 23, 2001, the district court dismissed the malpractice claim as a voluntary dismissal under IRPC 41(a)(1)(ii). On May 14, 2001, the ISB informed Wilhelm that under Idaho Bar Commission Rule (IBCR) 702(a)(1)(A) he would be unable to proceed with the fee arbitration on the basis that the district court had jurisdiction over the matter.

In the ongoing investigation, because the ISB had numerous questions that remained unanswered by Defendant A's letter of July 20, 2000, the ISB sent a follow-up letter to Defendant A requesting that he answer five specific questions regarding his billing and recordkeeping methods in the Wilhelm matter.

In response to the question of whether he ever sent Wilhelm periodic billing statements during the period of representation (May 1997–June 1998), Defendant A explained that upon release from jail the second time, Wilhelm had no job, permanent address or checking account. Defendant A claimed that none of the correspondence he sent to the only address he had on file was reported by Wilhelm as received. According to Defendant A, Wilhelm provided him and the court with his parents' address but lived elsewhere. In addition, Wilhelm told Defendant A that he was concerned with wiretaps and investigations by narcotics officers who were investigating him on other charges. Such circumstances made it very difficult to maintain normal attorney/client communications according to Defendant A. Therefore, rather than send periodic billings, they would discuss billings verbally because Wilhelm would not allow him to send anything to where he was actually staying. Defendant A claims that this course of conduct was not only agreed to but insisted on by Wilhelm.

In response to the question regarding the reason there were two bills dated two days apart, one dated September 2, 1997, and the other dated September 4, 1997, Defendant A recalled a discrepancy in a time entry and that he may have edited it on or about September 4, 1997. Furthermore, Defendant A explained that when he edits a bill, he may print off several drafts, edit and reprint with the final draft going to the client. Defendant A recalled that on September 4, 1997, Wilhelm came into the office to meet and he was personally given the statement, and that Wilhelm did not have any questions or point out any issues with the bill.

The billing inquiry required Defendant A to explain his statement that the September 2, 1997, statement was a draft itemization sent to Wilhelm when he had the file professionally copied and sent to him in prison as opposed to the later-dated statement of September 4, 1997. Defendant A responded that the September 4, 1997, statement probably was actually sent to Wilhelm in prison, along with the September 2, 1997, draft bill, which apparently had not been discarded. Defendant A stated also that Wilhelm never expressed any dissatisfaction with the billing statements until he retained new counsel to begin his appeal and post-conviction proceedings.

The fourth inquiry made by the ISB sought a response as to why the statements did not indicate what amounts Wilhelm had paid, if any, as of the date of the statements, or whether the entire amount billed on the particular statement was owed. Defendant A was further asked what kind of records he kept in this regard. Defendant A responded

that Wilhelm did not pay his fees like a typical client in that Defendant A could not mail a bill and receive a check (Wilhelm did not have a checking account). Defendant A states that Wilhelm always insisted that Defendant A meet him or Wilhelm's father in some location other than Defendant A's office to receive payment in cash at which time handwritten receipts would be exchanged. Defendant A would then make a notation in the file for payment received. Defendant A could not recall exactly when payment was received because his file had been compromised from being moved several times and from being stored for a lengthy period of time.

Finally, Defendant A was asked to explain why the statements did not indicate what amounts Wilhelm had paid, if any, as of the date of the statements, or whether the entire amount billed on the particular statement owed. Defendant A was also asked what kind of records he kept in this regard. Defendant A responded with the amounts paid. He also discussed other matters with which he helped Wilhelm, including aggravated battery and domestic violence charges. In each of these cases, Defendant A said that Wilhelm agreed to and paid a flat fee of $2,500 and $750 respectively.

Because the Hearing Committee had been concerned about Defendant A's billing and record keeping in general, the ISB asked Defendant A if he could provide an example of how he normally bills a client. On June 12, 2001, the ISB issued its decision in this matter concluding that Wilhelm was a unique client and that neither the manner in which Defendant A prepared and transmitted his billing statements nor the manner in which Wilhelm paid for the legal services was illustrative of the conduct associated with a typical attorney-client relationship. The ISB further concluded, however, that Defendant A had essentially complied with the requirements of IRPC 1.5(f) in this case, and based upon his sample billing for another client, it appeared that he kept proper records and

maintained a billing system that complied with IRPC 1.5(f).

On August 6, 2001, Wilhelm submitted his request for review of the ISB's decision. On January 25, 2002, a second Hearing Committee was convened, which on March 29, 2002 issued a decision. The Hearing Committee concluded that Defendant A had violated IRPC 1.5(f) and unanimously recommended that he receive a private reprimand. On April 3, 2002, a private reprimand was issued to Defendant A. Both Wilhelm and Defendant A seek review by the Supreme Court.

## II.

## STANDARD OF REVIEW

■ The Supreme Court bears the ultimate responsibility for determining what sanctions should be imposed on an attorney. *Idaho State Bar v. Williams,* 126 Idaho 839, 843, 893 P.2d 202, 206 (1995). In reviewing a hearing committee's decision the Court looks to see if the hearing committee's decision was clearly erroneous or arbitrary and capricious. *Runsvold v. Idaho State Bar,* 129 Idaho 419, 420, 925 P.2d 1118, 1119 (1996). The Court independently reviews the record and assesses the evidence; nevertheless the Court gives the hearing committee's findings of fact great weight. *Id.* The misconduct must be proven by clear and convincing evidence. *Defendant A v. Idaho State Bar,* 132 Idaho 662, 664, 978 P.2d 222, 224 (1999). However, the disciplined attorney bears the burden of proving the evidence does not support the factual findings. *Id.*

## III.

## THE HEARING COMMITTEE'S DETERMINATION WAS NOT CLEARLY ERRONEOUS

■ Defendant A contends that the statements he sent to Wilhelm on March 3, 1999 and May 19, 1999, substantially complied with Rule 1.5(f) in which he set forth the following information:

|                      | HOURS |                              | AMOUNT     |
|----------------------|-------|------------------------------|------------|
| Research/writing     | 8.0 × 5 days/week × 4 weeks |          | 17,600.00  |

Consult w/client daily

| | | |
|---|---|---|
| Totals: | 160 | 17,600.00 |
| Reduced, flat rate agreed upon: | | 13,000.00 |
| Total amount paid | | 13,000.00 |
| Total amount due: | | $ 0.00 |

Regarding this billing statement, the Hearing Committee stated the following:

> We are not convinced that [Defendant A] provided an accounting for fees and costs claimed, or that such accounting included an itemization of all hourly charges, costs, assessments and past due balances, as required by Idaho Rule of Professional Conduct 1.5(f). Certainly, [Defendant A's] record keeping and billing practices in this matter were far outside the spirit of the Professional Conduct Rules.

Defendant A argues that this finding is clearly erroneous on the basis that his billing practices substantially complied with Rule 1.5(f). Defendant A maintains that while Wilhelm may disagree with the information provided, the settlement of such a disagreement does not fall within the purview of the rule.

While another trier of fact may have come to a different conclusion as to the adequacy of Defendant A's billing practices, the Court gives great weight to the Hearing Committee's findings of fact. *Matter of Malmin,* 126 Idaho 1024, 1026, 895 P.2d 1217, 1219 (1995). It is the burden of the disciplined attorney "to show that the findings of fact are not supported by the evidence." *Id.* at 1026, 895 P.2d at 1219. Wilhelm has repeatedly stated that he never agreed to a reduced, flat rate as is asserted by Defendant A. Wilhelm's testimony alone provides sufficient evidence to support the Hearing Committee's findings. *See Idaho State Bar v. Malmin,* 139 Idaho 304, 78 P.3d 371 (2003) ("Again, while Malmin and Oliver provided testimony in conflict with that of Hill, Hill's testimony alone provides sufficient evidence supporting the hearing committee's findings."). Additionally, Defendant A reverted back to hourly billing in the month following the disputed month's

bill. Defendant A has not shown that the Hearing Committee's findings are not supported by the evidence.

## IV.

## ARBITRATION IS PROPER IN THIS CASE

Both Defendant A and the ISB contend that under the IBCR, Defendant A cannot be compelled to enter into arbitration with Wilhelm. Also, the ISB made the determination that no arbitration should be held since the matter was part of a lawsuit brought by Wilhelm in district court. Wilhelm contends that even if Defendant A does not agree to be bound by arbitration, the proceedings should continue under IBCR 703(b) and that if he prevails the ISB is required to secure a voluntary attorney to represent him in litigation under IBCR 707. Wilhelm disputes the ISB determination to disallow arbitration pointing to the fact that he allowed the action in district court to be dismissed before the ISB made its determination. Consequently, the district court no longer had jurisdiction. Wilhelm also claims that without arbitration he will be unable to pursue an action against Defendant A since the statute of limitations has since run on his malpractice action.

**A. The ISB wrongly applied IBCR 702(a)(1)(A) in denying arbitration to Wilhelm in this matter.**

The ISB dismissed the request for arbitration, reasoning that under IBCR 702(a) it did not have jurisdiction over a matter in which "a court ha(d) jurisdiction." The actual language of the rule states that the ISB will not have jurisdiction over a matter in which "a court *has* jurisdiction." (emphasis added). The Order of Dismissal

from the district court states that Wilhelm's Notice of No Objection and [Defendant A's] Waiver of Attorney Fees and Costs constitute a stipulation for voluntary dismissal pursuant to Rule 41(a)(1)(ii) of the Idaho Rules of Civil Procedure. Such a dismissal is considered a voluntary dismissal by all parties. The front page of the arbitration materials provided by the ISB states the following:

> If litigation is currently pending in this matter or if litigation is filed before the Agreement is signed by both parties, the arbitration process will be discontinued unless the attorney and client agree to suspend the litigation pending the decision of the arbitrator(s). *Requesting arbitration will not stop any court action,* unless the parties both agree. (emphasis added).

Since the malpractice action was dismissed under IRCP 41(a)(1)(ii), which is defined as a voluntary dismissal by all parties, the arbitration should not be suspended and should proceed according to the procedures set forth in the IBCR Section VII.

### B. While Defendant A cannot be forced to be bound by arbitration, the Idaho Bar Commission Rules require that arbitration should proceed.

■ IBCR 703(b) provides that if an attorney refuses or fails to be bound by arbitration within twenty-one days of his or her receipt of an arbitration request, the arbitration will proceed as otherwise provided by these rules. Thus, it appears that although Defendant A cannot be forced to be bound by arbitration, the ISB must still conduct proceedings. A decision of the arbitration committee will be non-binding on Defendant A.

### C. If Wilhelm prevails in the arbitration proceedings, the ISB must secure a volunteer lawyer at no cost to Wilhelm to represent him in any litigation brought concerning that aspect of the fee agreement.

■ On March 17, 2003, IBCR 707 in effect at the time the relevant events in this case took place was deleted from the IBCR. Prior IBCR 707 required that if the lawyer has not agreed to be bound by the arbitration decision and the decision is subsequently in the client's favor, the ISB will thereafter secure a volunteer lawyer at no cost to the client . . . to represent the client in any litigation brought concerning that aspect of the fee agreement. IBCR 701(b) states that any fee dispute submitted to a panel for determination prior to the effective date of these Rules shall be concluded under the procedure existing prior to the effective date of these Rules. Although this refers specifically to July 1, 1986 (the date on which these IBCR were enacted), it should also apply to new effective dates when individual rules are changed. Rule 707 in effect before March 17, 2003 was deleted. However, the fee dispute arbitration should be concluded under the procedure and rules in effect at the time the relevant events in this case took place. Therefore, if Wilhelm prevails in arbitration, the ISB will be required to secure a voluntary lawyer to assist him in subsequent litigation.

### V.

### THE HEARING COMMITTEE'S RECOMMENDATION TO ISSUE A PRIVATE REPRIMAND IN THE CURRENT CASE IS APPROVED

■ The Hearing Committee found that Defendant A violated IRPC 1.5(f) and recommended a private reprimand. In reviewing the decisions or recommendations of a hearing committee in past decisions, the Supreme Court has looked to see if the decision was clearly erroneous or arbitrary and capricious. *Runsvold v. Idaho State Bar,* 129 Idaho 419, 420, 925 P.2d 1118, 1119 (1996). There is sufficient evidence to support the determination that Defendant A did not comply with IRCP 1.5(f). Neither Defendant A nor Wilhelm agree, however, with the private reprimand.

Defendant A argues that his billing procedures were twice reviewed by the ISB and twice were determined sufficient. He points out that this was a very difficult and uncooperative client, that he had never before and has not since been disciplined by the ISB nor has any client submitted any complaint against him. He asserts that no reprimand should be issued. Wilhelm believes that a

private reprimand is akin to no discipline and serves to merely condone Defendant A's behavior.

Considering the findings of the Hearing Committee and the mitigating factors, a private reprimand is appropriate. *ABA Standards for Imposing Lawyer Sanction* (1991 Ed.), Standard 2.6 Admonition, states the following:

[Private Reprimand] is the least serious of the formal disciplinary sanctions, and is the only private sanction ... [private reprimand] should be used only when the lawyer is negligent, when the ethical violation results in little or no injury to a client, the public, the legal system, or the profession, and when there is little or no likelihood of repetition. Relying on these criteria should help protect the public while, at the same time, avoid damage to a lawyer's reputation when future ethical violations seem unlikely.

At worst Defendant A was negligent. He did not seek to defraud the client. Both the ISB and the two hearing committees found that Defendant A did not commit fraud, but was merely unable to account with sufficient detail the work he did for Wilhelm. Although it was found that his billing practices in this case were in disarray, there was never any finding that he was attempting to cover up or hide any wrongdoing. Wilhelm claims to have been injured in that he alleges that Defendant A overcharged him for his criminal defense. This allegation, although repeatedly asserted, has not been proved. According to the ABA, a private reprimand is appropriate when there is little or no likelihood of repetition. Defendant A never had any billing problems prior to his representation of Wilhelm and has not had any problems in the four years since.

The Hearing Committee's determination that Defendant A committed a violation is supportable by the evidence. The following mitigating factors also exist. Defendant A voluntarily complied with the investigation. He responded to all questions and complied with all requests to the extent he was able. Although his responses were not enough to convince the Hearing Committee that no violation had taken place, there is no evidence indicating that he lied to or kept information from either Wilhelm or the ISB. Wilhelm denies that he agreed to the flat fee of $13,000 for work billed in the February, 1998, billing statement but he paid the bill and did not object until he needed money for legal fees associated with his claims for post-conviction relief over a year later. Defendant A has not provided a written flat fee agreement for the bill in question, but IRPC 1.5 does not state that flat fee agreements must be made in writing.

Based on the nature of the infraction, the fact that this is the first and only time Defendant A's billing practices have been called into question, and considering the mitigating factors discussed above, the Hearing Committee's recommendation to issue a private reprimand in the current case is not clearly erroneous or arbitrary and capricious. The recommendation is adopted by the Court.

## VI.

## CONCLUSION

The recommendation of a private reprimand is adopted. Wilhelm is entitled to arbitration though such arbitration is not binding on Defendant A if he does not consent to be bound. If Wilhelm prevails in the arbitration, ISB must secure a volunteer attorney to represent him in further proceedings. No costs or attorney fees are awarded.

Chief Justice TROUT, Justices KIDWELL, EISMANN and BURDICK concur.